MARGARET A. HIGGINS, administratrix, &c.,

*v.*

THE JAMESBURG MUTUAL BUILDING AND LOAN ASSOCIATION et al.

[Filed October 11th, 1904.]

1. The record of an assignment of a mortgage is constructive notice of its existence and contents to one who takes a subsequent mortgage on the premises, and also that the assignor has no authority to procure the cancellation of the assigned mortgage.

2. The administratrix of a deceased assignee of a mortgage is not estopped to set up the existence of the mortgage, where the assignor obtained possession of it from her by false representations as to his right to it and purpose in obtaining it, and then caused it to be canceled of record and gave a new mortgage on the lands.

---

On bill to restore the lien of a canceled mortgage.

*Mr. Freeman Woodbridge,* for the complainant.

*Mr. John T. Rossell,* for the defendants.

BERGEN, V. C.

Martha Dickens executed and delivered to her son, David, a mortgage on lands in Middlesex county, to secure the payment of $600, which the son duly assigned to James S. Higgins, in consideration of $600, advanced in two parcels of $300 each, the second payment being about one year after the first. When the first payment was made a deed of assignment was executed by David, transferring to Higgins one-half of the mortgage, and when the second payment was made, another deed of assignment was executed, transferring the balance due on the mortgage; both deeds were duly recorded in the office of the clerk of the county of Middlesex. James S. Higgins died, and among his assets were found the mortgage, with the bond it was given to secure and the two deeds of assignment, and all came into the custody of the complainant as his administratrix. In the month of February, 1901, Martha Dickens and her son, David, applied to the defendant the Jamesburg Mutual Building and Loan Association for a loan of $600, to be secured by a mortgage upon the same lands. The solicitor of the building and loan association examined the records in the office of the clerk of the county of Middlesex and discovered of record the complainant's mortgage, but did not search for any assignment of this mortgage; had he done so, he would have found that the complainant's mortgage had been duly assigned to James S. Higgins in his lifetime. The solicitor was a witness and testified that he did not examine the records for assignments of mortgages because he had been told by David Dickens of the existence of the mortgage, and also that it had been paid. After preparing a bond and mortgage, the solicitor went to the house of Martha Dickens, near Monmouth Junction, procured the execution thereof by her, and told David that before they could have the money the previous mortgage for $600 must be canceled, whereupon David said that he thought he had the mortgage in the house and left the room to get it, but after a short time returned and said that the mortgage was in a safe at Monmouth Junction; they then drove to Monmouth Junction, and the solicitor waited in a hotel while David went for the bond and mortgage. After

being away a short time he returned with the bond and mortgage, and the solicitor wrote upon the mortgage a receipt for the amount due, with request to the clerk of the county to cancel same of record, which writing was signed by David Dickens, after which the solicitor took the mortgage to the clerk's office and procured its cancellation, and, causing the one given to the building and loan association to be recorded, paid over the amount of money it was given to secure. The manner in which the bond and mortgage were obtained from the complainant was as follows: Dickens went to the house of the complainant and told her that she had some papers that belonged to him, and if she would show him the papers she had he could point them out; thereupon she produced the bond and mortgage, with the two deeds of assignment, and he called her attention to the fact that the bond and mortgage were made out to him, and said he was entitled to have them, whereupon she complied with his request and allowed him to take the bond and mortgage, she retaining the deeds of assignment; nothing was said at the time by David indicating that the mortgage was to be canceled, or that the debt due to her as administratrix would be in any way affected by his taking the two papers. The complainant is a woman not very familiar with business matters and supposed, as she testified, that David was entitled to have papers which had his name on them, and that the assignments were the only papers she was entitled to hold. David was also sworn as a witness and testified that he had sold the mortgage to the complainant's husband for $600, and that the amount paid him had never been returned, and was still due, and that it was not his intention to destroy her security when he gave the mortgage to defendants' solicitor. After taking the bond and mortgage he continued to pay the interest thereon to the complainant, and she endorsed all the payments on one of the deeds of assignment, and never discovered that the mortgage had been canceled of record until some time in March, 1904, when she employed counsel, who filed, in her name as administratrix, the bill in this cause, praying that the cancellation of this mortgage might be annulled and made void and the bond and mortgage restored

to her, and decreed to be a valid and subsisting lien against the property as if no such cancellation had ever been made.

I am of the opinion that the complainant is entitled to the relief which she asks for. By the act respecting conveyances (Revision of 1898), assignments of mortgages may be recorded when properly acknowledged, and by section 53 of the same act such record shall thereafter be notice to all subsequent mortgagees of the execution thereof and of its contents, so that by the law of this state the building and loan association, when they accepted their mortgage, was chargeable with notice of the fact that David Dickens was not the owner of the mortgage, nor authorized to direct its cancellation. They did not find any certificate of cancellation of record, but the mortgage, intact, was placed in the hands of their solicitor by a person who, as the record stood, was not entitled to authorize its satisfaction or cancellation. They are chargeable with the knowledge which they could have obtained by inquiry from the person who held the record title to the mortgage debt. It was insisted, on the argument, that by surrendering the mortgage to David the complainant afforded him an opportunity to mislead the defendant, and that she should now be estopped from making the claim which she sets up in her bill of complaint, but in my judgment such an argument is not of sufficient force to justify its acceptance. The complainant was a mere trustee, holding this security for the benefit of those entitled to it under our act relating to the distribution of personal estates, and the mortgage · was obtained from her by misrepresentation and concealment of the purposes for which its possession was sought; she was not requested to sign any receipt in acknowledgment of its payment, nor to consent to its cancellation, and when David presented the bond and mortgage to the representative of the defendant he had no more title to it than if he had found it, and with the knowledge to be obtained from the record—that David had sold and transferred all of his interest in that mortgage—it was the duty of the defendant to do more in the premises than accept the statement of the assignor. *Harrison* v. *New Jersey R. & T.*

*Co., 19 N. J. Eq.* (*4 C. E. Gr.*) *488; Hcyder* v. *Excelsior Building Loan Association, 42 N. J. Eq.* (*15 Stew.*) *403.*

The complainant is entitled to a decree according to the prayer of her bill, and I will so advise.