This is the second suit to foreclose the same mortgage. The first suit, Scott v. Fischer, was brought by the original mortgagee against the then owners of the equity of redemption, and proceeded with the usual regularity to a sale. The present complainant was not a party to that suit, and now brings the present suit, asserting that it was not a party to Scott v.Fischer; that it had no knowledge of that suit and that all during that suit it was and now is the owner of the mortgage by assignment. Besides the ordinary prayer for foreclosure, it prays that the entire first foreclosure suit be vacated as a fraud upon it and that its mortgage be held to be prior to another subsequent mortgage made to defendant Saddle River Township Building and Loan Association.
The mortgage sought to be foreclosed in this suit was executed July 27th, 1915, by Philip Wilensky to William W. Scott, for the sum of $2,250. On July 9th, 1928, William W. Scott, who will hereafter be designated as Scott Senior, assigned the mortgage to one Arbaugh, trustee. This assignment was recorded on July 11th, 1928. On the same day as the assignment, Arbaugh, who was president of the present complainant, Passaic Park Trust Company, in turn assigned the mortgage to the present complainant. The assignment from Arbaugh to the trust company was not recorded until July 31st, 1930. In August, 1928, Scott Senior instituted the suit of Scott v. Fischer. The bill of complaint in that suit alleged a reassignment of the mortgage by Arbaugh back to Scott, so that he then claimed to be the owner of the mortgage. Neither Arbaugh nor the trust company were made parties nor had any actual knowledge of the suit. *Page 292 Scott v. Fischer proceeded in ordinary course to a decree and sale of the premises. Scott Senior bid in the premises at the sale and transferred the property to one Mary Fischer, upon payment to Scott Senior of the amount of the mortgage. Mary Fischer obtained the money to make this payment by a loan from the building and loan association, giving a mortgage to the association for $3,000.
In the present suit the question is whether complainant is entitled to a lien under the mortgage prior to the mortgage executed by Mary Fischer to the building and loan association. This involves the validity and effect of the decree in the first foreclosure suit. The building and loan association asserts that it acted in good faith and in reliance upon the proceedings in the first foreclosure suit. It contends that the sheriff's deed under the decree in that suit conferred upon it a title clear of any claim of complainant.
The mere statement of the foregoing facts makes it clearly apparent that fraud was perpetrated by someone. The manipulator was undoubtedly Winfield T. Scott, the son of William W. Scott. This Winfield T. Scott has absconded, leaving behind him a long trial of frauds in real estate matters. He and his father were associated, and the father implicitly trusted the son and signed any papers or documents presented to him by the son.
Under such circumstances the son began the first foreclosure suit, alleging the execution of the mortgage, the assignment and an assignment back to the father, who was the complainant. All appeared regular on the face of things. Process was duly served on the then owners of the equity, a decree pro confesso was entered and the matter referred to a master to make the usual report. The master made a report in the usual form, reciting among other things that there had been produced before him and marked as exhibits the original bond and mortgage, the assignment and reassignment back to the father. On the report the premises were ordered sold and were sold by the sheriff to Scott Senior. This was followed by the conveyance to Mary Fischer and the mortgage to the building and loan association. *Page 293 
From the testimony before me I find that in fact the original bond and mortgage, the assignment and reassignment to Scott Senior were not produced before the master. Evidently there never was any such reassignment. The officials of the trust company testified that the company never executed any reassignment. Scott Senior testified that he did not remember ever having received one. The execution of the reassignment was unlikely since the bond and mortgage were held by the bank as security for a note, then and still not paid in full. The officials of the bank further testified that the original bond and mortgage were in the vaults of the bank, during the entire first foreclosure proceeding. They could not, therefore, have been presented to the master. This is corroborated by the fact that the bond and mortgage as produced at the hearing before me are not marked by the special master. Scott Junior represented his father at the hearing before the master, and apparently imposed upon the latter by some jugglery of documents, produced as being the genuine ones. The master may have been imposed upon by forged documents, actually seen and marked by him. His testimony is to the effect that he must have seen and marked the documents, otherwise he would not have so reported.
I find that in fact there never was any reassignment to Scott Senior. He, too, was evidently imposed on by his son, and no blame for any intentional wrong-doing is imputed to him by me. He and his son conducted a very large business in connection with mortgages and other real estate transactions, and I have no doubt that when he executed the deed to Mary Fischer he did so at the solicitation of his son and without knowledge of the facts.
The contention of the building and loan association that its mortgage takes precedence over complainant's mortgage, is unsound. The title on which its mortgage is based derives only from the sheriff's deed under the first foreclosure suit. This deed did not convey any absolute title but conveyed only the title of the parties to that suit. Sale of Land Act, 4 Comp.Stat. p. 4675 § 7. Neither Arbaugh nor the present *Page 294 
complainant were such parties. All during the time of the first foreclosure suit the assignment to Arbaugh was on record and therefore all the parties to the suit and all those deriving title through them had constructive notice of the title in Arbaugh, to whose rights complainant succeeded. By the sheriff's deed there was and could have been conveyed only the equity above the mortgage.
The building and loan association undoubtedly acted in good faith in making the loan to Mary Fischer. It did so in reliance upon the sheriff's deed and the record in the court of chancery in the suit of Scott v. Fischer. But such reliance can be justified only to the extent of the interest conveyed by the sheriff's deed in the foreclosure. It does not meet the vital objection to the building and loan association's claim, that the record in the county clerk's office gave constructive notice that Scott Senior was not the owner of the mortgage. There is an estoppel when the owner of mortgaged premises pays the mortgage pursuant to a decree in foreclosure to the record mortgagee.Wilson v. Stevens, 105 N.J. Eq. 377. But the record of the assignment is constructive notice of its existence. Higgins v.Jamesburg Mutual Building and Loan Association, 67 N.J. Eq. 525.
Nor has complainant been guilty of laches. Wilson v.Stevens, supra (at p. 387).
The building and loan mortgage is therefore subordinate to the complainant's mortgage.
The building and loan company has now raised the question of a defect of parties in that Scott Senior was not made a party. Although from the bill it would appear that Arbaugh and complainant were absolute assignees of the mortgage, it developed at the hearing that the mortgage was collateral to secure a note given by Scott Senior to the trust company. Payments were made on the note so that it has been reduced to a point below that of the amount of the mortgage. Scott Senior should have been a party to this suit. No application was made by the building and loan company to have him joined as a party, nor has he made any such application, although he testified at the hearing. It is well recognized practice in this court to settle the equities between the parties *Page 295 
before the court when it can do so without prejudice to the rights of others. Kocher Trier § 81. After final hearing, the only reason for having Scott Senior as a party is to dispose of the possible surplus after a sale under complainant's mortgage above the amount due complainant on the note for which the mortgage is security. I see no reason for withholding from complainant the relief to which it is entitled from the facts shown at the hearing.
A decree will be advised, establishing the priority of complainant's mortgage over that of the building and loan association, directing a sale of the premises to satisfy complainant's mortgage, directing that the surplus remaining shall be paid to the defendant building and loan association on its mortgage. The decree in the suit of Scott v. Fischer will be set aside or modified so far as it interferes with the foregoing. Settle decree on consent or notice.